UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER FROST and ANNETTE FROST,

                Plaintiffs,                           Case No. 1:10-cv-1213

v.                                             HON. JANET T. NEFF

WELLS FARGO BANK, N.A.,

                Defendant.

_____/

## OPINION

Plaintiffs Walter and Annette Frost filed suit in Michigan state court to challenge a foreclosure of their property, and Defendant Wells Fargo Bank, N.A. (Wells Fargo) removed the matter to this Court. Now pending before the Court is Defendant's Motion for Summary Judgment (Dkt 59), to which Plaintiffs filed a Response (Dkt 64), and Defendant filed a Reply (Dkt 68). Also pending is Plaintiffs' Motion for Partial Summary Judgment (Dkt 61), to which Defendant filed a Response (Dkt 66), and Plaintiffs filed a Reply (Dkt 67). Having conducted a Pre-Motion Conference on this matter and having now fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly granted and Plaintiffs' motion is properly denied.

### I. BACKGROUND

### A. Material Facts

**1.  May 2002-September 2009:  *Loan Origination and Default***

On May 23, 2002, Plaintiffs executed a note, listing Northern Mortgage Services, Inc. as Lender, and evidencing a debt of $87,000.00 for their property (Dkt 71, Joint Statement of Material Facts [JSMF] ¶ 1).  Pursuant to the note, monthly payments of $578.81 were due on the first of each month, beginning on July 1, 2002 (*id.* ¶ 2).  The interest rate stated on the note is 7 percent (*id.* ¶ 3). Plaintiffs also executed a mortgage on May 23, 2002, granting a security interest in the real property commonly known as 1460 Cody Lake Road, Trufant, Michigan, as security for the note (JSMF ¶ 4). Since 2002, Defendant has serviced Plaintiff's mortgage (*id.* ¶ 6).  Federal Home Loan Mortgage Corporation ("Freddie Mac") held an interest in the mortgage from at least November 1, 2009 to December 31, 2010 (*id.* ¶ 7).

In 2009, Plaintiff Walter Frost was laid off from his job, and as a result of the loss in income, Plaintiffs defaulted under their mortgage by falling behind in their mortgage payments (JSMF ¶ 8). Plaintiffs' last regular loan payment was in September 2009 (*id.* ¶ 9).

**2.  November 2009-May 2010:  *Loan Modification Request***

On or about November 12, 2009, Plaintiff Walter Frost contacted Defendant to discuss Plaintiffs' payment options (JSMF ¶ 10).  Plaintiffs provided certain financial information over the telephone and were pre-qualified for a modification under the Home Affordable Modification Program (HAMP) (*id.* ¶ 11).  On or about November 13, 2009, Defendant sent a HAMP package to Plaintiffs (*id.* ¶ 13).  The November 13, 2009 package contained two letters dated November 13, 2009 and enclosures, including:  (1) "Complete Your Checklist," (2) "Important Program Information," (3) "Frequently Asked Questions," (4) two copies of a 3-page Trial Period Plan (TPP) agreement, (5) "Important Information About Your Trial Period Plan," (6) payment coupons, (7) a

fax cover sheet, and (8) a hardship affidavit (*id.* ¶ 14).  The first November 13, 2009 letter, immediately following the language, "If you have any questions, please contact us at (800) 416-1472," concluded with the following typed language:

> Sincerely,
> Ben Windust
> Senior Vice President

(*id.* ¶ 15 [DEF 00026]).  The second November 13, 2009 letter, immediately following the language, "If you have any questions about this requirement, please contact us at 1-800-416-1472," concluded with the following typed language:

> Sincerely,
>
> Wells Fargo Home Mortgage

(*id.* [DEF 00038]).  Plaintiffs returned a signed copy of the TPP agreement to Defendant by the December 1, 2009 deadline (*id.* ¶ 16).

Defendant sent Plaintiffs a "Request for Additional Information" dated November 30, 2009, in which it stated that additional information was needed before Defendant could "move forward with the mortgage payment relief" (JSMF ¶ 20).  The November 30, 2009 letter concluded with the following typed language:

> Sincerely,
>
> Amy Mong-Xuan Vu
> Underwriter/Mortgage Specialist

(*id.* [DEF 00046]).

Defendant never executed the TPP agreement or any other written modification agreement with the Plaintiffs (JSMF ¶ 17).  The TPP agreement stated that trial payments were to be made in

3

the amount of $417.26 on December 1, 2009; January 1, 2010; and February 1, 2010 (*id.* ¶ 18). Plaintiffs timely made all three trial payments (*id.* ¶ 19).

On Friday, December 4, 2009, Plaintiff Walter Frost called Defendant, and spoke to a representative named Rubin (JSMF ¶ 22). At some point in the call, Rubin suggested that Mr. Frost call back on Monday, December 7, 2009 (*id.* ¶ 24). Walter Frost called Defendant on Monday, December 7, 2009 and spoke with a representative named Danny, who advised Mr. Frost to send in bank statements from the two most recent months (*id.* ¶ 25). On December 8, 2009, Plaintiffs sent Defendant a three-page fax to the number provided in the November 30, 2009 letter (*id.* ¶ 27). On December 8, 2009, Plaintiffs sent Defendant a second fax of two pages (*id.* ¶ 28).

On February 5, 2010, Walter Frost called Defendant and spoke with an agent named Christa, who advised him to continue making his trial payments and that Defendant needed updated documentation including proof of income, hardship letter, and a completed financial worksheet (JSMF ¶ 29). Christa also advised Frost that the documents were needed because the previous documents they supplied were more than thirty days old (*id.* ¶ 30). Defendant's process notes likewise show that on February 5, 2010 at 13:27:58: "BRRW RETURNED CALL. ADVISED NEED UPDATED POI, HL AND FW" (*id.* ¶ 31). Defendant's representative, Susan Rowles, testified at her deposition that these notes reflected that the borrower returned a call and was advised that he needed to submit updated proof of income, hardship letter and financial work-sheet (*id.*).

Defendant did not receive the documents that it requested on February 5, 2010 (JSMF ¶ 32). Annette Frost never sent any documents to Defendant (*id.* ¶ 33). Walter Frost kept notes showing dates he called or had contact with Defendant, and his notes do not show that any documents were sent to Defendant between December 2009 and May 2010 ( (*id.* ¶ 34). Similarly, Plaintiffs' fax

4

history shows that they did not fax any documents to Defendant between December 9, 2009 and May 2010 (*id.* ¶ 35).  Plaintiffs continued making payments in the trial amount of $417.26 for March, April and May 2010 (*id.* ¶ 36).

On or about May 13, 2010, Defendant denied Plaintiffs' request for a permanent loan modification request because Plaintiffs failed to provide requested documents (JSMF ¶ 37). Defendant notified Plaintiffs of its decision in a letter dated May 13, 2010 (*id.* ¶ 38).  The May 13, 2010 letter was signed by Windust (*id.* ¶ 39).  Plaintiffs attempted to continue making payments to Defendant, but Defendant refused to accept payments following denial of a loan modification and returned Plaintiffs' June 1, 2010 payment (*id.* ¶ 40).

### 3.  June-August 2010: *Foreclosure by Advertisement Proceedings*

Defendant then began the foreclosure by advertisement process (JSMF ¶ 41).  The law firm Orlans Associates, P.C. ("Orlans") represented Wells Fargo in this process (*id.*).  Orlans' records show that on or about June 15, 2010, Orlans sent several letters to Plaintiffs, via regular and certified mail (*id.* ¶ 42).  On June 17, 2010, Plaintiffs received, via first class mail, an envelope from Orlans addressed to Annette S. Frost, with three pieces of paper inside:  a page containing address lines for Orlans and for Plaintiffs; a page that was blank except for two lines on the right side of the page; and a page with paragraphs lettered G through I, and a signature line (*id.* ¶ 43).  On June 17, 2010, Plaintiffs also received, via first class mail, an envelope from Orlans and addressed to Walter Frost, with three pieces of paper inside: a page containing address lines for Orlans and for Plaintiffs; a page that was blank except for two lines on the right side of the page; and a page with paragraphs lettered G through I, and a signature line (*id.* ¶ 44).  On June 17, 2010, Plaintiffs also received, via first class mail, an envelope from Orlans and addressed to Walter Frost and Annette S. Frost, with a single page

letter inside dated June 14, 2010, which informed Plaintiffs that they may be eligible for certain rights if they were on active duty in the military (*id.* ¶ 45).

On June 18, 2010, Plaintiffs received, via certified mail, an envelope from Orlans addressed to Annette S. Frost, with three pieces of paper inside: a page containing address lines for Orlans and for Plaintiffs; a page that was blank except for two lines on the right side of the page; and a page with paragraphs lettered F through I, and a signature line (JSMF ¶ 47).  The letters received on June 17 and 18, 2010 appear to be identical (*id.* ¶ 48).  Annette Frost stated that she believed the letters related to Defendant, and the fact that they came by certified mail suggested that they were important (*id.*).

On or about June 27, 2010, Plaintiffs mailed a letter to Orlans, providing their telephone number and asking someone to contact them (JSMF ¶ 49).  Orlans attempted to reach Plaintiffs as requested and claims to have left a voice-mail message for Plaintiffs on July 8, 2010 (*id.* ¶ 50).  At some point, Walter Frost directed Annette Frost to call Orlans and to ask Orlans about the blank pages in the June 17 and 18 letters they received (*id.* ¶ 51).

On or about July 20, 2010, a Notice of Foreclosure was placed on Plaintiffs' home, which stated that $81,992.06 was due and owing on the mortgage (JSMF ¶ 52).  Annette Frost called Orlans that same day (*id.* ¶ 53).  She did not recall whether she notified Orlans that two of the pages were blank (*id.*).  During the July 20, 2010 telephone call, Orlans offered to send Plaintiffs' financial information to Defendant for consideration of a modification, but Plaintiffs said there was "no point" (*id.* ¶ 54).

On or about July 26, 2010, Plaintiffs' attorney contacted Orlans requesting a meeting and consideration of loan modification (JSMF ¶ 55).  Orlans agreed to review Plaintiffs for a loan

modification (*id.* ¶ 56).  Orlans did not cancel the scheduled sheriff's sale on Plaintiff's home, but agreed to adjourn the sheriff's sale until the mediation meeting was held (*id.*).

On August 2, 2010, Orlans sent Plaintiffs' attorney a financial package for Plaintiffs to complete (JSMF ¶ 57).  The financial package requested that Plaintiffs provide the following documents:  a financial worksheet; copies of their most recent payroll stubs; copies of their most recent federal income tax returns; and copies of their most recent bank statements (*id.*).  On August 16, 2010, Plaintiffs provided a Borrower Financial Information sheet, disclosing their gross monthly income (*id.* ¶ 58).  Plaintiffs additionally provided Orlans with Walter Frost's pay stubs from July 2010 (*id.* ¶¶ 59-65).  Plaintiffs additionally provided Orlans with bank statements from a bank account for the months of May and June 2010 (*id.* ¶ 66).

In a letter dated August 27, 2010, Orlans stated that a mediation meeting was scheduled for September 2, 2010 at 11:00 a.m., and that Plaintiffs did not need to provide any updated information prior to the meeting (JSMF ¶ 69).  During the September 2, 2010 meeting, Defendant agreed to review Plaintiffs again for a possible modification, and the foreclosure remained on hold (*id.* ¶ 70).  Plaintiffs also met with a housing counselor, who was present at the September 2, 2010 meeting (*id.* ¶ 71).

Following the September 2, 2010 meeting, Defendant again reviewed Plaintiffs for a possible modification (JSMF ¶ 72).  Susan Rowles testified for Defendant that Plaintiffs were reviewed following the September 2, 2010 mediation under the investor guidelines for Freddie Mac's internal modification program (*id.* ¶ 73).  Rowles stated that Plaintiffs had already been denied under HAMP for failing to return documents (*id.* ¶ 74).  Rowles explained that one of the requirements in the guidelines was that Plaintiffs' interest rate could be dropped only 2 percent from the contractual rate

and that Plaintiffs had to meet a certain debt coverage ratio (*id.* ¶ 75). Defendant maintains that it denied Plaintiffs a modification on or about September 29, 2010 because Plaintiffs did not meet the interest rate requirements or the debt-to-income ratio requirement under the loan investor's guidelines (*id.* ¶ 76). Plaintiffs required an interest rate deduction of more than 2 percent to afford a modification (*id.* ¶ 77). In a letter dated September 29, 2010, Defendant stated that it could not provide a modification for the reason that it was "unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage" (*id.* ¶ 78). The sheriff's sale of Plaintiff's property was eventually re-noticed for December 2, 2010.

### B. Procedural Posture

On November 29, 2010, Plaintiffs filed an eight-count Complaint in state court against Defendant. Plaintiffs presented the following claims:

- I.       Breach of Contract
- II.      Breach of Contract–Third Party Beneficiary
- III.     Promissory Estoppel
- IV.      Declaratory Judgment–Void Foreclosure Proceedings
- V.       Declaratory Judgment: Wrongful Foreclosure
- VI.      Permanent Injunction
- VII.     Regulation of Collection Practices Act Violation
- VIII.    Michigan Consumer Protection Act Violation

The state court granted Plaintiffs a Temporary Restraining Order (TRO) on November 30, 2010, enjoining the sheriff's sale of the property during the pendency of the case (Dkt 1, Ex 2). The state court order indicated that the TRO would remain in effect until the state court held a show cause hearing, which was subsequently noticed for December 13, 2010 (Dkt 1, Ex 3).

However, on December 9, 2010, Defendant, a bank chartered in South Dakota, removed the case to this Court, citing diversity jurisdiction (Dkt 4, Notice of Removal ¶ 4). *See* 28 U.S.C. § 1332

8

(diversity jurisdiction); *see also* 28 U.S.C. § 1450 (instructing that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court").  On February 8, 2011, the Court extended the Temporary Restraining Order entered by the state court in this removed action and enjoined the sale of Plaintiffs' home during the pendency of this action (Dkt 13).

This Court noticed a Show Cause Hearing for March 31, 2011 but adjourned the hearing to a later date in light of the parties' settlement negotiations, negotiations that proved to be unsuccessful.  At the Show Cause hearing held on May 9, 2011, the Court, with the benefit of a more complete record and the oral and written arguments of counsel, determined that the balance of factors also warranted the issuance of a Preliminary Injunction during the pendency of this case (Order, Dkt 22).  The Preliminary Injunction indicated that Plaintiffs were making monthly mortgage payments into the escrow account maintained by their attorney, and, to the Court's knowledge, Plaintiffs have continued making these payments during the pendency of this case.

Following discovery, the parties engaged in voluntary facilitative mediation sessions in January 2012 and again in March 2012, negotiations that again proved to be unsuccessful (Dkt 48).  The Court held a pre-motion conference on March 19, 2012 and subsequently issued a briefing schedule on the parties' proposed dispositive motion (Dkt 50).  The parties filed their cross-motion papers in August 2012.

## II.  MOTION STANDARD

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In considering a motion for summary judgment, the court must draw all

reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Because this is a diversity action in a matter removed to a Michigan district court, the substantive law of Michigan applies. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001). This Court must follow and apply Michigan law in accordance with the controlling decisions of the Supreme Court of Michigan. *Id.*

## III.  ANALYSIS

Defendant moved for summary judgment of all eight counts in Plaintiffs' Complaint. In their response to Defendant's motion, Plaintiffs indicate that they "withdraw or waive" Count II (Breach of Contract–Third Party Beneficiary) as well as Count VIII (MCPA) (Dkt 64 at 15). Therefore, the Court will not address Defendant's arguments or the evidence in support of those claims. Plaintiffs' cross-motion seeks summary judgment in their favor on Counts V and VI.

### A.  Contract-Based Claims

Plaintiff's contract-based claims are presented in Counts I, III and IV. In Count I of their Complaint (Breach of Contract), Plaintiffs allege that "Plaintiffs and Defendant entered into a contract to modify the existing mortgage and loan, whereby Plaintiffs agreed to make payments pursuant to the TPP [Trial Period Plan], and upon the successful completion of that TPP, Defendant agreed to provide Plaintiffs with a permanent loan modification" (Dkt 1-1 ¶ 43). In Count III of their Complaint (Promissory Estoppel), Plaintiffs allege that Defendant promised them that successful completion of a trial modification period would result in a permanent loan modification and they

would not be subject to foreclosure (*id.* ¶¶ 43, 57).  In Count IV of their Complaint (Declaratory Judgment–Void Foreclosure Proceedings), Plaintiffs seeks a declaratory judgment that the pending foreclosure proceedings are void because there was no default in the mortgage as amended by the TPP (*id.* ¶¶ 64-65).

Defendant argues that Plaintiffs' contract-based claims fail for two reasons:  (1) the claims are based on Plaintiffs' contention that Plaintiffs were in compliance with a modification agreement that the undisputed facts show never existed; and (2) even if there were an enforceable modification agreement, Plaintiffs breached the alleged agreement by failing to provide the required documents to Defendant.  Plaintiffs respond that the writings in this case collectively satisfy the statute of frauds and that Defendant's motion on Counts I, III and IV should therefore be denied.[1]

**1.  *Statute of Frauds***

Michigan's statute of frauds was amended in 1993 to include the following provision specifically applicable to financial institutions:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a)    A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b)    A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial

---

[1]The parties in this case challenge the form of the contract, whether the statute of frauds has been satisfied, but not the substance of the contract, i.e., whether there was a meeting of the minds regarding the essential particulars of the transaction.  *See generally Zurcher v. Herveat*, 605 N.W.2d 329, 335 (Mich. Ct. App. 1999) (explaining the difference between the form and the substance of a contract); *contrast Darcy v. CitiFinancial, Inc.*, No. 1:10-cv-848, 2011 WL 3758805 (W.D. Mich. Aug. 25, 2011) (resolving challenges to the substance of the contract)

accommodation.

(c)     A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

MICH. COMP. LAWS § 566.132(2).

The Michigan Court of Appeals has held that subsection (2) of the statute of frauds is "unambiguous," using "generic and encompassing terms" to describe the types of promises or commitments that the statute of frauds protects "absolutely," as "an unqualified and broad ban." *Crown Tech. Park v. D & N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). Subsection (2) of the statute of frauds "plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Id.*; *see also Cadle Co. II, Inc. v. P.M. Group, Inc.*, No. 275099, 2007 WL 3119569, at *2 (Mich. Ct. App. Oct. 25, 2007) (holding that where no authorized representative of the bank signed a modification or waiver, the alleged agreement to modify or waive the guaranty was unenforceable under the statute of frauds). Moreover, the Sixth Circuit Court of Appeals has observed that "[t]he legislative history of Michigan's Statute of Frauds reflects that the statute was designed to protect financial institutions from suits ... alleging oral promises of financial commitment that expose the financial institution to a risk of loss." *Schering–Plough Healthcare Prods., Inc. v. NBD Bank, N.A.*, 98 F.3d 904, 909 (6th Cir. 1996).

Compliance with Michigan's statute of frauds is decided on a case-by-case basis. *Kelly-Stehney & Assocs., Inc. v MacDonald's Indus. Prod., Inc.*, 693 N.W.2d 394, 398 (Mich. Ct. App. 2005). Under Michigan law, parol evidence is allowed to supplement a document. *See Miller v. Americor Lending Grp., Inc.*, No. 1:06-cv-33, 2007 WL 107664, at *3 (W.D. Mich. Jan. 9, 2007).

Here, Plaintiffs do not rely on any oral promises by Defendant to provide them with a permanent loan modification. Rather, Plaintiffs posit that three letters from Defendant, along with the signatures required for Defendant to cash at least six trial period payments by Plaintiffs, collectively satisfy the requirement for a writing, signed "with an authorized signature by the financial institution[,]" found in MICH. COMP. LAWS § 566.132(2) (Dkt 64 at 6-8, citing *Kelly-Stehney*, 693 N.W.2d at 399 (holding that "the writing requirement of the statute of frauds may be satisfied by several writings made at different times"), and *Adell Broadcasting Corp. v. Cablevision Indus.*, 854 F. Supp. 1280, 1291 (E.D. Mich. 1994) (holding that the check endorsed and deposited by the defendant was "a sufficient writing to bind it to some sort of agreement with Plaintiff"). The letters upon which Plaintiffs rely are (1) the November 13, 2009 cover letter accompanying the HAMP package, which concluded with the typed name of Senior Vice President Windust; (2) the November 30, 2009 Request for Additional Information, which concluded with the typed name of Underwriter/Mortgage Specialist Mong-Xuan Vu; and (3) the May 13, 2010 letter referencing the TPP and informing Plaintiffs of Defendant's decision to deny Plaintiffs a permanent modification, which was signed in cursive by Windust. Plaintiffs assert that the signed writing requirement is met in this case by Defendant's three documents and Plaintiffs' part performance and that the statute of frauds therefore cannot bar their contract-based claims.

Defendant points out that *Kelly-Stehney*, the case upon which Plaintiffs rely for the proposition that multiple documents may collectively constitute an agreement, concerned subsection (1) of Michigan's statute of frauds, MICH. COMP. LAWS § 566.132 ("An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement"), whereas the case at bar involves only subsection (2) of the statute, the subsection applicable to financial institutions

13

(Dkt 68 at 2-3).  However, this district has applied the reasoning of *Kelly-Stehney* to cases involving financial institutions, declining to adopt narrow and rigid rules for compliance with the statute of frauds within the financial institution context, too.

For example, in *Gallagher v. BAC Home Loans Servicing, L.P.*, No. 1:11-cv-1356, 2012 WL 1952349, at *10 (W.D. Mich. May 30, 2012), the court found the combined effect of the signed cover letter accompanying an unsigned Forbearance Agreement bound the defendant to an agreement because the documents were "so related and connected to each other that they constitute one paper relating to the contract."  Similarly, in *Miller,* 2007 WL 107664, at *3, the court determined that the plaintiffs-homeowners' receipt of a pre-approval letter (signed by the defendant's loan officer), together with the Good Faith Estimate, Truth in Lending Disclosure, and Amortized Schedule of payments, succeeded in showing at least a genuine issue of material fact regarding whether a contract existed between the parties.

While multiple documents may together be sufficient to satisfy the requirements of the statute of frauds, neither the documents in *Kelly-Stehney* nor the documents in *Gallagher* and *Miller* concerned any question regarding the sufficiency of the signatures therein.  In contrast, the November 13, 2009 cover letter accompanying the TPP agreement in this case contained only a printed name.  The November 30, 2009 Request for Additional Information is of the same indefinite character.  The only letter upon which Plaintiffs rely that is "signed," i.e., with a traditional cursive signature, is the last May 13, 2010 denial letter.

On the topic of the sufficiency of a signature, the Michigan Court of Appeals has held that "any symbol executed or adopted by a party with the present intent to authenticate a writing may serve as a signature."  *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 458 (Mich. Ct. App. 1989); *see,*

*e.g., Archbold v. Indus. Land Co.*, 249 N.W. 858 (Mich. 1933) (holding that initials are sufficient as a "signature" under the statute of frauds).  The court of appeals also indicated that whether a person intended to authenticate a writing is a question of fact.  *Jim-Bob,* 443 N.W.2d at 458.

In examining the collection of documents Defendant sent Plaintiffs, as well as the parties' course of conduct, the Court is not convinced that Defendant has shown that there is no genuine issue of material fact regarding whether a contract existed between the parties.  Reasonable minds could differ as to whether the printed names merely identify the letter's senders or whether the printed names indicate the senders' intentions to authenticate the writing.  Moreover, although the import to be assigned to the payments Plaintiffs tendered is diminished where Plaintiffs owe Defendant money under the terms of their loan documents, *see, e.g., Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-cv-751, 2011 WL 1118669, at *4 (W.D. Mich. Mar. 25, 2011) (rejecting the plaintiffs-homeowners' argument that "[t]he written offer of a 'Payment Relief' program, coupled with the payment coupons, tied together with proof of timely payments made, survives any Statute of Frauds argument"), reasonable minds could also infer that the payments are evidence consistent with an agreement between the parties.  In sum, drawing all reasonable inferences in favor of Plaintiffs, the Court determines that Plaintiffs have succeeded in showing at least a genuine issue of material fact regarding whether a contract existed between the parties.

## 2.  *First Breach Doctrine*

Defendant argues that even if there were an enforceable agreement, Plaintiffs breached the alleged agreement by failing to provide the required documents to Defendant.  Defendant's argument provides an independent basis for summary judgment in its favor of Plaintiff's Counts I, III and IV.

"A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just

15

as valid as any other contract." *Opdyke Inv. Co. v. Norris Grain Co.*, 320 N.W.2d 836, 838 (Mich. 1982) (citing 1 CORBIN, CONTRACTS, § 29, p. 84).  However, "[t]he rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 198 N.W.2d 702, 706 (Mich. Ct. App. 1972) (citing 5 CALLAGHAN'S MICH. CIVIL JURIS., § 249, pp. 820-21).  *See, e.g., Tawfik v. BAC Home Loans Serv., LP*, No. 11-12590, 2011 WL 6181441, at *3 (E.D. Mich. Dec. 13, 2011) (agreeing that the plaintiff is prohibited "under longstanding authority" from bringing an action against the defendant for a breach inasmuch as the plaintiff committed the first breach).

Here, the TPP required Plaintiffs to provide "confirmation of the reasons [they] could not afford [their] mortgage payment and documents to permit verification of all [] income ... to determine whether [they] qualify for the offer" (Dkt 60-1 at 12, ¶ 1(D) [DEF 00030]).  Defendant's November 30, 2009 written "Request for Additional Information" indicated that additional information was needed before Defendant could "move forward with the mortgage payment relief" (JSMF ¶ 20).  Defendant's representatives in December 2009 and again in February 2010 orally reiterated to Plaintiffs that it required updated documentation to proceed (*id.* ¶¶ 25, 29-31).  The parties do not dispute that Plaintiffs' notes do not show that any documents were sent or faxed to Defendant between December 2009 and May 2010 (*id.* ¶¶ 34-35), nor do the parties dispute that Defendant did not receive the documents requested in February 2010 (*id.* ¶ 32).  Defendant denied Plaintiffs' modification request on or about May 13, 2010 because they failed to provide requested documents (*id.* ¶ 37).  Under Michigan's first breach doctrine, Plaintiffs cannot maintain their contract-based claims against Defendant.  The Court therefore grants summary judgment in Defendant's favor on Plaintiffs' Counts I, III and IV.

16

## B.  Wrongful Foreclosure Claims

According to Plaintiffs, Defendant initiated the present non-judicial foreclosure of their home without the legal right to do so (Dkt 62 at 19).  Michigan's Foreclosure by Advertisement statute, MICH. COMP. LAWS § 600.3204 *et seq.,* provides in pertinent part that "[a] party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if 1 or more of the following apply:

(a)     Notice has not been mailed to the mortgagor as required by section 3205a.

(b)     After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b3 has not expired.

(c)     Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d)     Documents have been requested under section 3205b(2) and the time for producing the documents has not expired.

(e)     The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(f)     The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(g)     Calculations under section 3205c(1)4 show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7)."

MICH. COMP. LAWS § 600.3204(4).

In Count V of their Complaint (Declaratory Judgment), Plaintiffs allege that Defendant failed to comply with Michigan's Foreclosure by Advertisement statute by: (1) failing to provide Plaintiffs with the proper notice of the foreclosure; (2) continuing with foreclosure proceedings based on an invalid notice; and (3) failing to properly consider Plaintiffs for a modification (Dkt 1-1 ¶ 80). Plaintiffs' Count VI (Permanent Injunction) does not set forth any new claims but seeks alternate relief in the form of a permanent injunction enjoining current and future foreclosure of their mortgage by advertisement (Dkt 60 at 13).

In their counter-motion for summary judgment in their favor on these two counts, Plaintiffs argue that there is no genuine issue as to any material fact relating to the fact that Defendant failed to provide proper notice prior to initiating foreclosure (Dkt 62 at 9). According to Plaintiffs, the foreclosure on Plaintiffs' home was initiated without first providing proper notice of their right to be reviewed for a loan modification, in violation of MICH. COMP. LAWS § 600.3204(4)(a) and MICH. COMP. LAWS § 600.3205a (*id.*). Additionally, Plaintiffs argue that they requested a loan modification prior to the notice of sheriff's sale and that Orlans initiated the foreclosure in violation of MICH. COMP. LAWS § 600.3204(4)(c) (Dkt 62 at 9-10). Further, Plaintiffs opine that they qualified for a loan modification under MICH. COMP. LAWS § 600.3205c, and Defendant should therefore not have continued with foreclosure proceedings (*id.* at 11-12).

Defendant argues that these claims fail because Plaintiffs received the benefit of the notice and review provisions of the foreclosure by advertisement statute (Dkt 60 at 10). According to Defendant, even assuming there was a "photocopying glitch" and Plaintiffs did not receive full copies of the letters that arrived at their address in June 2010, no harm was suffered as a result where Plaintiffs were able to take advantage of all their statutory rights (*id.* at 11-12). Defendant opines

18

that because Plaintiffs were not prejudiced by any notice errors they claim may have occurred, they have not established grounds to disturb their foreclosure (Dkt 66 at 2).  In reply, Plaintiffs argue that the statute does not require them to prove harm (Dkt 67 at 3).

Although there is no statutory requirement to demonstrate harm or prejudice arising from claimed mistakes or omissions in notice, the prejudice inquiry is not irrelevant.  "[A] defect in notice, standing alone and in the absence of a showing of prejudice, is an insufficient ground for invalidating—and, by extension, enjoining—a foreclosure sale."  *Bowden v. Am. Home Mortg. Servicing, Inc.*, No. 10-12972, 2012 WL 628543, at *4 (E.D. Mich. Feb. 27, 2012) (citing *Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich., 2004), aff'd 192 F. App'x 369 (6th Cir. 2006)).  The Michigan Court of Appeals has reasoned that "[i]n situations where it is evident that no harm was suffered, in that the mortgagor would have been in no better position had notice been fully proper and that the mortgager lost no potential opportunity to preserve some or any portion of his interest in the property, we see little merit in the rule of law which [the mortgagor] advocates.  Such a rule would automatically nullify the sale without regard to consideration of the intervening interests of the other parties."  *Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 413 N.W.2d 99, 101 (Mich. Ct. App. 1987) (analyzing the notice of foreclosure requirements of MICH. COMP. LAWS § 600.3208); *see also Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 663 (Mich. Ct. App. 2007) (dismissing a claim because the defendants could not show any prejudice from any alleged defect in the notice of adjournment as required under MICH. COMP. LAWS § 600.3220).

Here, as Defendant points out, Plaintiffs met with a housing counselor; Plaintiffs participated in a mediation meeting where they requested to be re-reviewed for a modification; Defendant delayed the foreclosure and reviewed Plaintiffs for a modification—for at least the third time; and

19

the sheriff's sale was delayed more than 90 days from the date of the original notice that Plaintiffs'

claim was deficient (Dkt 66 at 2).  On these facts, the claimed defects in process, standing alone, do

not support the issuance of either declaratory or injunctive relief.[2]  The Court therefore grants

summary judgment in Defendant's favor on Plaintiffs' Counts V and VI.

### C.  RCPA Claim

Under the Regulation of Collection Practices Act (RCPA), MICH. COMP. LAWS § 445.251

*et seq.*, a "regulated person" shall not make "an inaccurate, misleading, untrue, or deceptive

statement or claim in a communication to collect a debt."  MICH. COMP. LAWS § 445.252(e).  A

"regulated person" is also prohibited from "[u]sing a harassing, oppressive, or abusive method to

collect a debt."  MICH. COMP. LAWS § 445.252(n).

In Count VII of their Complaint, Plaintiffs allege that in attempting to foreclose their

mortgage, Defendant willfully violated the RCPA by

A.    Making inaccurate, misleading, untrue, or deceptive statements in communications to collect a debt;

B.    Misrepresenting the legal status of a legal action being taken or threatened;

C.    Misrepresenting the legal rights of the creditor or debtor;

D.    And using a harassing, oppressive, or abusive debt collection method.

(Dkt 1-1 ¶¶ 89-90).

Defendant argues that Plaintiffs' RCPA claim fails because the enforcement of a security

---

[2]To the extent Plaintiffs' cross-motion also requests injunctive relief on the basis that Defendant did not provide them with a loan modification under HAMP, the request does not compel a different result.  As set forth in Defendant's motion for summary judgment, and conceded by Plaintiffs in response thereto, there is no private right of action under HAMP for failing to provide a review or modification.

interest through foreclosure is not a debt collection (Dkt 60 at 13-14, citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003); *McCann v. U.S. Bank, N.A.*, 2012 WL 1902547, *13 (E.D. Mich. Apr. 3, 2012) ("the enforcement of a security interest through a nonjudicial foreclosure is not collection of a debt for purposes of the FDCPA")). Defendant also argues that even if the RCPA applied, there are no facts to support Plaintiffs' allegations (*id.* at 14-16).

Plaintiffs emphasize that during the entire time that the parties were exchanging letters and telephone communications, the nature of their relationship was that of a mortgage servicer on the one side, attempting to collect payments under a mortgage and otherwise service the mortgage, and debtors in default of their mortgage on the other side (Dkt 64 at 16-21, citing *Mielke v. Bank of America Home Loans Servicing, LP*, No. 2:10-cv-11576, 2011 WL 1464848, at *6 (E.D. Mich. April 18, 2011)). Plaintiffs opine that whether the communications were deceptive or misrepresented relevant information is a question of fact precluding summary judgment in Defendant's favor (*id.* at 21, 25).

Defendant is a "regulated person" within the meaning of the RCPA. See MICH. COMP. LAWS § 445.251(g)(*ii*) (providing that a "regulated person" includes "a state or federally chartered bank when collecting its own claim"). However, there is no basis to apply the RCPA in this case. Section 445.252(n) of the RCPA prohibits "harassing, oppressive, or abusive methods to collect a debt." Michigan law expressly authorizes foreclosures by advertisement, *see* MICH. COMP. LAWS §§ 600.3208, 600.3212, and sheriff's sales, *see* MICH. COMP. LAWS §§ 600.3216, 600.3220. On the facts of this case, the Court does not find that a statutorily authorized sheriff's sale pursuant to a statutorily authorized foreclosure is a harassing, oppressive, or abusive collection method within

21

the meaning of the RCPA.  *See Bolone v. Wells Fargo Home Mortg., Inc.*, 858 F. Supp. 2d 825, 2012 WL 882894, at *11 (E.D. Mich. 2012) (reaching the same conclusion on similar facts). Further, the queries Plaintiffs made to Defendant to check the status of their loan modification progress, and the letters Defendant sent Plaintiffs are also not "harassing, oppressive, or abusive collection methods" actionable under the RCPA.  *Compare Grden v. Leikin Ingber & Winters, PC*, 643 F.3d 169, 173 (6th Cir. 2011) (recognizing that FDCPA does not apply to every communication between a debt collector and a debtor, and ministerial responses to debtor inquiries that do not make any demand for payment are not communications in connection with the collection of a debt). Therefore, Defendant is also entitled to judgment as a matter of law on Plaintiffs' Count  VII.

## IV.  CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment of the counts remaining in this case.  An Order will be entered consistent with this Opinion.  Moreover, because the Order resolves the last pending claim in this case, the Court will also enter a Judgment.  *See* FED. R. CIV. P. 58.

DATED: October 4, 2012                  /s/ Janet T. Neff
                                          JANET T. NEFF
                                          United States District Judge